UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Tina Plumley,
        Plaintiff,

        v.                                    Civil Action No. 2:09-CV-42

Michael J. Astrue,
Commissioner of Social Security,
        Defendant.

## OPINION AND ORDER
(Docs. 7 and 13)

Claimant Tina Plumley brings this action pursuant to 42 U.S.C. § 405(g) of the

Social Security Act, seeking review of the decision of the Commissioner of Social

Security ("Commissioner") denying her application for adult child's disability benefits

under 20 C.F.R. § 404.350.  Pending before the Court are Plumley's Motion seeking an

order reversing the Commissioner's decision (Doc. 7), and the Commissioner's Motion

seeking an order affirming the same (Doc. 13).

For the reasons explained below, the Court GRANTS Plumley's Motion to

Remand to the Commissioner for a new hearing (Doc. 7), and DENIES the

Commissioner's Motion (Doc. 13).

## Plumley's Background/Procedural History

Plumley was born on February 16, 1959, and has twelve years of education.

(Administrative Record ("AR") 39, 46-47, 128, 183.)  She has an erratic and flimsy work

history, consisting of only short-term jobs, such as waitressing, cooking, and

telemarketing. (AR 47, 137, 212-28, 392.) Plumley alleges that this weak work history is the result of her psychological impairments, including post traumatic stress disorder ("PTSD") and adjustment disorder, which she claims stem from her being caught in a traumatic fire in her family's home when she was seven years old, and the resultant permanently disfiguring second and third degree burns she suffered on her scalp, face, ears, shoulders, forearms, wrists, and hands. (AR 30-36, 47, 176, 222, 242, 421.) After the fire, which occurred on January 2, 1967, Plumley was hospitalized for more than four months, and underwent multiple skin grafting procedures to her hands, face, and scalp. (AR 179, 421-22.) In the following approximately fifteen years, Plumley underwent additional surgeries to address burn scars and deformities on her hands, fingers, and face. (AR 423-29.) The earliest medical evidence regarding mental impairments reveals that Plumley received counseling in high school for depression (AR 392, 439), was diagnosed with PTSD and atypical personality disorder in September 1983 (AR 839), and was admitted to the Medical Center Hospital of Vermont for a short period in July and August of 1984, at which time she was diagnosed with adjustment disorder with depressed mood, associated with marital problems (AR 390-92, 430-37, 439).

On or around July 1, 1998, Plumley applied for Supplemental Security Income ("SSI"), and thereafter was found disabled as of June 25, 1998, due to her "mental marked limitations in [her] . . . ability to complete a normal workday/week." (AR 128-31, 170.) In January 2002, the Commissioner reviewed Plumley's claim to determine whether her disability continued, and thereafter determined that Plumley remained disabled. (AR 39-40, 49-50, 159-69.) On or around December 11, 2006, Plumley filed

an application for adult child's disability insurance benefits ("DIB") based on her father

Fred Merle Snide's earnings records.[1]  (AR 27, 222, 235.)  According to Plumley, she has

been unable to work since January 1, 1980 (the alleged disability onset date) primarily

because she has been uncomfortable around and has had a difficult time dealing with

people, as a result of her self-consciousness and embarrassment about her appearance and

her memory of being ridiculed as a child due to her disfiguring appearance caused by the

fire.  (AR 29-36, 38, 164-65, 175-76, 222, 242, 252.)  She further claims that she has

been unable to work since January 1, 1980 as a result of her difficulty sleeping, coping

with daily demands, completing tasks, concentrating, remembering facts, maintaining

normal personal relationships, and dealing with stressful situations.  (AR 29-36, 160, 164,

173.)

      Plumley's application was denied initially and upon further reconsideration.  (AR

46-48, 61-63, 74-82.)  She timely requested an administrative hearing (AR 83, 87), which

occurred by video teleconference on October 9, 2008 (AR 15-38).  On November 3,

2008, Administrative Law Judge ("ALJ") Frederick Harap issued a decision finding that

Plumley was not disabled, as defined in the Social Security Act, prior to February 15,

1981, the date she turned 22.[2]  (AR 7-14.)  Thereafter, the Decision Review Board

---

[1] In her Motion, Plumley explains that she seeks benefits as an adult child based on her father's earnings records because the benefits she would receive under such account would "presumably" be larger than the SSI benefits she is currently receiving.  (Plumley's Motion, p. 3, ¶ 2.)

[2] As discussed in more detail below, under 20 C.F.R. § 404.350(a)(5), in order to be eligible for child's insurance benefits, the child (Plumley, here) must be "under age 18; . . . *18 years old or older and have a disability that began before [he or she] became 22 years old*; or . . . 18 years or older and qualify for benefits as a full-time student."  (Emphasis added.)

("DRB") selected the ALJ's decision for review and ultimately affirmed such decision. (AR 1-3.)

On February 12, 2009, Plumley filed a Complaint against the Commissioner, initiating this action.

## **ALJ Decision**

The Commissioner uses a five-step sequential process to evaluate disability claims. *See Butts v. Barnhart*, 388 F.3d 377, 380-81 (2d Cir. 2004). The first step requires the ALJ to determine whether the claimant is presently engaging in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b), 416.920(b). If the claimant is so engaged, he is not considered disabled. If the claimant is not engaged in substantial gainful activity, step two requires the ALJ to determine whether the claimant has a "severe impairment." 20 C.F.R. §§ 404.1520(c), 416.920(c). If the ALJ finds that the claimant has a severe impairment, the third step requires the ALJ to make a determination as to whether the claimant's impairment "meets or equals" an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"). 20 C.F.R. §§ 404.1520(d), 416.920(d). The claimant is presumptively disabled if the impairment meets or equals a listed impairment. *Ferraris v. Heckler*, 728 F.2d 582, 584 (2d Cir. 1984); *Gravel v. Barnhart*, 360 F. Supp. 2d 442, 445 (N.D.N.Y. 2005). If the claimant is not presumptively disabled, the fourth step requires the ALJ to consider whether the claimant's "residual functional capacity" ("RFC") precludes the performance of his or her past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f). The fifth and final step requires the ALJ to determine whether the claimant can do "any other work." 20 C.F.R. §§ 404.1520(g), 416.920(g).

The claimant bears the burden of proving his case at steps one through four, *Butts v. Barnhart*, 388 F.3d at 383, and at step five, there is a "limited burden shift to the Commissioner" to "show that there is work in the national economy that the claimant can do," *Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009) (clarifying that the burden shift to the Commissioner at step five is limited, and the Commissioner "need not provide additional evidence of the claimant's residual functional capacity").

Employing this five-step analysis, the ALJ in this case determined that Plumley was not disabled prior to February 16, 1981, the date she turned 22 years old.[3] (AR 14.) At step one, the ALJ found that Plumley had not engaged in substantial gainful activity since January 1, 1980, the alleged onset date. (AR 9.) At step two, the ALJ found that, although Plumley suffered from a medically determinable impairment - specifically, an adjustment disorder - prior to her 22nd birthday, that impairment did not significantly limit her ability to perform basic work-related activities for twelve consecutive months, and thus, the impairment was not "severe" during the relevant time period. (AR 10.) This determination was based primarily on the ALJ's findings that: (a) Plumley's statements concerning the intensity, persistence, and limiting effects of her symptoms "are not credible;" (b) "there is no medical evidence that would allow the [ALJ] to assess [Plumley's] psychological state" during the relevant period; and (c) the record reflects

---

[3] At various places in the decision, the ALJ states that Plumley attained age 22 on "February *15*, 1981," instead of on February *16*, 1981. (*See* AR 9, 13, 14 (emphasis added).) This appears to have been a typographical error. Based on the evidence before the Court, Plumley's date of birth is in fact February *16*, 1959 (*see, e.g.,* AR 39, 46, 128), making her 22nd birthday February *16,*1981; and based on other comments made in the decision, the ALJ appears to have been aware of this fact (*see, e.g.,* AR 11 ("[D]uring the period at issue, specifically January 1, 1980[,] her alleged onset date of disability[,] through *February 15, 1981, the day before her twenty second birthday*, . . .") (emphasis added)).

that Plumley "functioned quite well until she became depressed in 1990, approximately ten years after her [22nd] birthday."  (AR 11-12.)

Given the ALJ's determination that Plumley had a medically determinable mental impairment during the relevant period, in measuring the "severity" of such impairment, the ALJ considered the four functional limitation areas listed in section 12.00C of the Listing of Impairments (20 C.F.R. Part 404, Subpart P, Appendix 1), otherwise known as the "paragraph B" criteria.  (AR 12.)  Upon such consideration, the ALJ concluded that Plumley's adjustment disorder caused no more than "mild" limitation in any of the first three functional areas (activities of daily living; social functioning; and concentration, persistence, and pace), and "no" limitation in the fourth area (episodes of decompensation).  (AR 13.)  Based on these findings, the ALJ determined that Plumley was not disabled during the relevant period.

## <u>Standard of Review</u>

The Social Security Act defines the term "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  A person will be found to be disabled only if it is determined that his "impairments are of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A).

Under 20 C.F.R. § 404.350, the child of an insured wage earner who has died or is eligible for disability or old age benefits under the Social Security Act may be entitled to child's insurance benefits, if the child is under the age of 18, over the age of 17 and a full-time student, or became disabled before the age of 22. *See also* 42 U.S.C. § 402(d). In this case, Plumley has applied for disability benefits based on her deceased father's earnings record. Because she is over the age of 18 and not a full-time student, in order to receive child's benefits, Plumley must demonstrate that she became disabled before she reached age 22. Therefore, given her birth date of February 16, 1959, Plumley must demonstrate that she became disabled on or before February 15, 1981. (*See* AR 11, 39.) The disability standard for adult child's benefits is the same as that for general disability insurance benefits. Thus, Plumley must show that a physical or mental impairment prevented her from engaging in substantial gainful activity before she turned 22.

In reviewing a Commissioner's disability decision, the court limits its inquiry to a "review [of] the administrative record *de novo* to determine whether there is substantial evidence supporting the . . . decision and whether the Commissioner applied the correct legal standard." *Machadio v. Apfel*, 276 F.3d 103, 108 (2d Cir. 2002) (citing *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000)); *see* 42 U.S.C. § 405(g). A court's factual review of the Commissioner's decision is limited to determining whether "substantial evidence" exists in the record to support such decision. 42 U.S.C. § 405(g); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991). "Substantial evidence" is more than a mere scintilla; it means such relevant evidence as a reasonable mind might accept as adequate

to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *Poupore v. Astrue*, 566 F.3d at 305.

In determining whether an ALJ's findings are supported by substantial evidence, the court must consider "the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). Additionally, the court "'must . . . be satisfied that the claimant has had a full hearing under the Commissioner's regulations and in accordance with the beneficent purposes of the [Social Security ] Act.'" *Jones v. Apfel*, 66 F. Supp. 2d 518, 522 (S.D.N.Y. 1999) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990)). In reviewing the evidence, the court must determine if the ALJ set forth the "crucial factors" justifying his or her findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision. *Willis v. Comm'r of Soc. Sec.*, No. 6:05-CV-611, 2008 WL 795004, at *1 (N.D.N.Y. Mar. 24, 2008); *see also Ferraris v. Heckler*, 728 F.2d at 587.

The reviewing court's role with respect to the Commissioner's disability decision is "'quite limited[,] and substantial deference is to be afforded the Commissioner's decision.'" *Hernandez v. Barnhart*, No. 05 Civ. 9586, 2007 WL 2710388, at *7 (S.D.N.Y. Sept. 18, 2007) (quoting *Burris v. Chater*, No. 94 Civ. 8049, 1996 WL 148345, at *3 (S.D.N.Y. Apr. 2, 1996)). The court should not substitute its judgment for that of the Commissioner. *Yancey v. Apfel*, 145 F.3d 106, 111 (2d Cir. 1998). The Second Circuit explained: "The entire thrust of judicial review under the disability

8

benefits law is to ensure a just and rational result between the government and a claimant, without substituting a court's judgment for that of the Secretary, and to reverse an administrative determination only when it does not rest on adequate findings sustained by evidence having 'rational probative force.'" *Williams v. Bowen*, 859 F.2d at 258 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. at 230). Therefore, if the reviewing court finds substantial evidence to support the Commissioner's final decision, that decision must be upheld, even if substantial evidence supporting the claimant's position also exists. *See Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990) ("Where there is substantial evidence to support either position, the determination is one to be made by the fact finder."); *see also DeChirico v. Callahan*, 134 F.3d 1177, 1182-83 (2d Cir. 1998).

Finally, the Social Security Act "must be construed liberally because it is a remedial statute that is intended to include, rather than exclude, potential recipients of benefits." *Jones*, 66 F. Supp. 2d at 522; *Dousewicz v. Harris*, 646 F.2d 771, 773 ("In its deliberations the District Court should consider the fact that the Social Security Act is a remedial statute to be broadly construed and liberally applied.").

<u>**Analysis**</u>

Plumley contends the ALJ failed to follow the requirements of Social Security Ruling ("SSR") 83-20 by failing to determine the onset date of Plumley's impairment; failing to consider Plumley's work history, medical records, and treating physician opinions; and failing to adequately develop the record, including contacting a medical advisor. For the reasons explained below, the Court finds that, although the ALJ's failure to explicitly reference SSR 83-20 was harmless error, the ALJ's failure to call a medical

9

advisor to assist in inferring Plumley's disability onset date requires remand. This finding is based on the Court's conclusion, after careful review of the record, that the evidence regarding the onset date of Plumley's adjustment disorder is ambiguous, and thus, SSR 83-20 requires the ALJ to consult a medical advisor to assist in inferring an onset date. *See Bailey v. Chater*, 68 F.3d 75, 79 (4th Cir. 1995) ("[I]f the evidence of onset is ambiguous, the ALJ must procure the assistance of a medical advisor in order to render the informed judgment that [SSR 83-20] requires."); *Spellman v. Shalala*, 1 F.3d 357, 363 (5th Cir. 1993); *Morgan v. Sullivan*, 945 F.2d 1079, 1082-83 (9th Cir. 1991).

## I. ALJ's Failure to Determine Onset Date of Disability

In cases like this, where a claimant with an alleged disability onset date preceding her 22nd birthday files an application for adult child's benefits, and has already been found disabled under another title of the Social Security Act but for the period post-dating her 22nd birthday, SSR 83-20 requires the ALJ to determine the onset date of disability.[4] The decision states: "In addition to determining that an individual is disabled, the decision[-]maker must also establish the onset date of disability." SSR 83-20, 1983 WL 31249, at *1 (S.S.A. 1983). The onset date is defined as "the first day an individual is disabled as defined in the [Social Security] Act and the regulations." *Id.*

In order to determine a disability onset date pursuant to SSR 83-20 (hereafter "the Ruling"), the ALJ must first determine whether the alleged impairment is of traumatic or non-traumatic origin. For disabilities of traumatic origin, the determination is relatively

---

[4] "Social Security Rulings are agency rulings 'published under the authority of the Commissioner of Social Security and are binding on all components of the Administration.'" *Sullivan v. Zebley*, 493 U.S. 521, 531, n. 9 (1990) (quoting 20 CFR § 422.408 (1989)).

straightforward – the onset date is the date of injury. *Field v. Shalal[a]*, No. Civ. 93-289-B, 1994 WL 485781, at *2 (D. N.H. Aug. 30, 1994) (citing SSR 83-20, at *2). For injuries of non-traumatic origin, however, such as the mental disability at issue here,[5] "the determination of onset [date] involves consideration of the applicant's allegations, work history, if any, and the medical and other evidence concerning impairment severity." SSR 83-20, at *2.

The "starting point" in determining the onset date in a non-traumatic disability origin case, according to the Ruling, is the claimant's statement as to when the disability began. SSR 83-20, at *2. In this case, Plumley states that her disability began on January 1, 1980. (AR 29, 38, 222.) The ALJ must compare this date with the onset date, if any, which is established by the claimant's work history and medical evidence on record. SSR 83-20, at *2. The Ruling provides the following guidelines for situations where the claimant's statement regarding the onset date of disability conflicts with the date established by the medical and/or work evidence:

> In determining the date of onset of disability, the date alleged by the individual should be used if it is consistent with all the evidence available. When the medical or work evidence is not consistent with the allegation, additional development may be needed to reconcile the discrepancy. However, the established onset date must be fixed based on the facts and can never be inconsistent with the medical evidence of record.

*Id.* at *3.

While the Ruling clearly emphasizes the importance of objective medical evidence, it acknowledges that in some cases, the claimant's impairment may have

---

[5] Although it could be argued that Plumley's impairment had a "traumatic" origin, i.e., the 1967 fire, she has not adopted this argument, and has instead asserted that her onset date was January 1, 1980, more than ten years after the fire. (AR 29, 38, 222.)

become disabling prior to the date it was first diagnosed. *See* SSR 83-20, at *3; *Lichter v. Bowen*, 814 F.2d 430, 435 (7th Cir. 1987) ("[T]he critical date is the date of *onset* of disability, *not* the date of diagnosis.") (emphasis in original) (internal quotation and citation omitted). Therefore, although objective medical evidence is necessary to establish the existence of a disabling impairment, *see, e.g.*, 20 C.F.R. § 404.1508; SSR 96-4p, 1996 WL 374187, at *1 (S.S.A. Jul. 2, 1996), if a claimant has already been found to suffer from a disabling impairment, objective medical evidence, while preferred, is not essential to resolving the onset date of that disability. One Court explained:

> [SSR 83-20] makes clear that there are three factors that must be considered when determining the onset date of a claimant's disability: "the applicant's allegations, work history, if any, and the medical and other evidence concerning impairment severity." Nowhere in the SSR is there any suggestion that the absence of medical records establishing an onset date is fatal to an individual's disability claim. In fact, the SSR provides just the opposite, specifically noting that in some cases it may be necessary to infer the onset date of a claimant's disability from non-medical evidence.

*Moriarty v. Astrue*, No. 07-cv-342-SM, 2008 WL 4104139, at *6 (D. N.H. Aug. 28, 2008) (quoting SSR 83-20, at *2).

In this case, the ALJ did not follow SSR 83-20's mandate to infer an onset date of Plumley's disability. Courts have held, however, that an ALJ's failure to explicitly rely on SSR 83-20 is harmless error, to the extent that the dictates of the decision are nonetheless followed. *See, e.g., Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005) ("The ALJ did not refer to SSR 83-20 specifically in his decision, but this omission by itself is not reversible error. We must determine whether the ALJ nevertheless properly applied the requisite analysis."). Moreover, courts have held that

an ALJ's failure to follow SSR 83-20's requirement to determine an onset date is harmless error, where the ALJ finds that the onset date post-dated the date last insured; substantial evidence supports that finding; and the decision generally comports with the analysis set forth in SSR 83-20. *See, e.g., Ware v. Barnhart*, No. 03-170-B-W, 2004 WL 1529266, at **2-3 (D. Me. Jun. 24, 2004) (while ALJ never explicitly determined claimant's onset date, no reversible error resulted, as ALJ implicitly found that onset date post-dated date of last insured; substantial evidence supported that finding; and ALJ's decision comported with SSR 83-20 in other material respects).

Here, rather than determining or attempting to infer an onset date, the ALJ found that Plumley's onset date post-dated her 22nd birthday. As explained below, substantial evidence does not support this finding, and the ALJ's decision does not comport with the analysis set forth in SSR 83-20. Therefore, the ALJ's failure to follow SSR 83-20's requirement to infer an onset date of Plumley's disability was not harmless. The basis for the ALJ's determination that Plumley's onset date post-dated her 22nd birthday was that: (a) "there is no medical evidence that would allow the [ALJ] to assess [Plumley's] psychological state" during the relevant period (AR 11); and (b) "there is simply no evidence of medical treatment for a psychologically based impairment during the period under review" (AR 12). The ALJ's focus on the absence of medical treatment records from the relevant period was improper. *See, e.g., Arnone v. Bowen*, 882 F.2d 34, 39 (2d Cir. 1989) (noting that dearth of contemporaneous evidence does not necessarily preclude claimant's entitlement to a period of disability); *Beasich v. Comm'r of Soc. Sec.*, 66 Fed. Appx. 419, 429 (3d Cir. 2003) ("The fact that a claimant may be one of the millions of

people who did not seek treatment for a mental disorder until late in the day is not a substantial basis to reject that an impairment existed.") (internal quotation and citation omitted); *Spellman v. Shalala*, 1 F.3d 357, 363 (5th Cir. 1993) ("[L]ack of evidence alone is not sufficient to support a finding that an impairment did not exist at a disabling level of severity."). Similarly, a district court in the Second Circuit has held that, under SSR 83-20, the absence of contemporaneous medical records does not preclude a finding of disability:

> Miller has no medical records for the time period between 1996 and 2001. There consequently are no contemporaneous records which can establish that she was disabled as of May 15, 1999. The absence of these records, however, does not preclude her from otherwise demonstrating th[at] she was disabled as of that date. Social Security Ruling . . . 83-20 provides instructions for the determination of disability onset date in such circumstances when the date needs to be inferred.

*Miller v. Astrue*, No. 03 Civ.2072(LAP)(FM), 2008 WL 2540750, at *10 (S.D.N.Y. Jun. 23, 2008).

In cases like this, where disability has already been determined and the Court need only determine the onset date of disability, and where the impairment is slowly progressive, SSR 83-20 acknowledges that "it is sometimes impossible to obtain medical evidence establishing the precise date an impairment became disabling." SSR 83-20, at *2. The Ruling further acknowledges that determining the proper onset date is particularly difficult in cases like this, where "the alleged onset and the date last worked are far in the past and adequate medical records are not available." *Id.* Therefore, in these cases, the Ruling directs that "it will be necessary to *infer* the onset date from the medical and other evidence that describe the history and symptomatology of the disease

process." *Id.* (emphasis added).  The Ruling continues: "Particularly in the case of slowly progressive impairments, it is not necessary for an impairment to have reached listing severity (i.e., be decided on medical grounds alone) before onset can be established." *Id.*  In this case, the ALJ did not attempt to infer an onset date, and instead improperly required actual medical records of treatment during the relevant period.

## II.     ALJ's Failure to Develop the Record and Seek a Medical Advisor

SSR 83-20 "imposes what might fairly be called heightened record-development duties." *Godsey v. Astrue*, No. 08-410-P-S, 2009 WL 1873528, at *3 (D. Me. June 29, 2009).  For example, as noted above, the Ruling provides that when a claimant's medical or work evidence is not consistent with the claimant's alleged disability onset date, the ALJ may need to further develop the record to reconcile the discrepancy.  SSR 83-20, at *3.  In this case, the ALJ was not derelict in attempting to obtain contemporaneous medical records for the period prior to Plumley's 22nd birthday.  It is undisputed that there are no medical records from that period which document Plumley's mental health issues. (*See* Plumley's Motion, p. 4.)  Nor was the ALJ derelict in developing the record with respect to witness testimony, work records, and other documentation.  Rather, it is clear that the ALJ and other individuals at the administrative level went to great lengths to compile a complete record which accurately depicted Plumley's impairments and consequent limitations during the relevant period.[6]  (*See, e.g.,* AR 81, 244-48, 621.)  The fact remains, however, that the administrative hearing occurred over twenty-five years

---

[6] *See, e.g.,* AR 81, where Federal Reviewing Official Elizabeth Pendergrass stated: "We made every reasonable effort to develop your medical history for the period in question; in fact, we researched all possible evidence and obtained records retrieved from microfilm."

from the date of the period under review, which creates obvious problems in terms of finding and obtaining relevant records.

In addition to the general "heightened record-development duties" imposed by SSR 83-20, the Ruling specifically requires that, at the administrative hearing, the ALJ "should call on the services of a medical advisor when [the] onset [date] must be inferred." *Id.* at *3. This requirement "is merely a variation on the most pervasive theme in administrative law - that substantial evidence support an agency's decisions." *Bailey v. Chater*, 68 F.3d 79, 80 (4th Cir. 1995). In this case, the ALJ's failure to call upon the services of a medical advisor to assist in inferring Plumley's disability onset date is troubling.

While SSR 83-20 does not mandate that a medical advisor be called in every case, courts have construed this step to be "essential" when the record is ambiguous regarding onset date. *Kelly v. Astrue*, No. 06-168-P-S, 2007 WL 2021923, at *7 (D. Me. Jul. 11, 2007) (citing *Katt v. Astrue*, No. 05-55043, 2007 WL 815418, at *1 (9th Cir. Mar. 14, 2007) ("[A]n ALJ must call a medical expert if there is ambiguity in the record regarding the onset date of a claimant's disability. If the medical evidence is not definite concerning the onset date and medical inferences need to be made, SSR 83-20 requires the administrative law judge to call upon the services of a medical advisor . . . .") (citation and internal quotation marks omitted). For example, in *Grebenick v. Chater*, 121 F.3d 1193, 1200-01 (8th Cir. 1997), the Eighth Circuit stated:

> It is important to understand that the issue of whether a medical advisor is required under SSR 83-20 does not turn on whether the ALJ could reasonably have determined that [claimant] was not disabled before

16

September 30, 1982. Rather, when there is no contemporaneous medical documentation, we ask whether the evidence is ambiguous regarding the possibility that the onset of her disability occurred before the expiration of her insured status. *If the medical evidence is ambiguous and a retroactive inference is necessary, SSR 83-20 requires the ALJ to call upon the services of a medical advisor* to insure that the determination of onset is based upon a legitimate medical basis.

*Id.* (emphasis added) (citations and internal quotation marks omitted); *see also Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 353 (7th Cir. 2005) ("The ALJ acknowledged that the medical evidence was inconclusive. Rather than explore other sources of evidence, as SSR 83-20 requires, the ALJ drew a negative inference at that point.").

The Commissioner argues that, in this case, the medical evidence was not ambiguous, and thus SSR 83-20's requirement that the ALJ call a medical advisor does not apply. In support of this argument, the Commissioner cites *Adame v. Apfel*, No. 98-4144-DES, 2000 WL 422341 (D. Kan. Mar. 20, 2000) and *Gray v. Barnhart*, No. 2:00-CV-333, at **25-27 (D. Vt. Apr. 30, 2002). Not only are these cases distinguishable on their specific facts, they are also inapposite because, in those cases (unlike in this case), there was no prior ALJ determination of disability, and thus the procedures set forth in SSR 83-20 did not apply. *See, e.g., Nix v. Barnhart*, 160 Fed. Appx. 393, 396-97 (5th Cir. 2005) (holding that absent an ALJ's finding of disability, there is no need to infer an onset date, and thus SSR 83-20's medical advisor requirement does not apply); *McCracken v. Comm'r of Soc. Sec.*, No. 1:08-CV-327, 2009 WL 2983049, at *4 (S.D. Ohio Sep. 14, 2009) (holding that where "there was never a finding that Plaintiff became disabled at any time, . . . SSR 83-20 does not apply to determine whether the claimant became disabled prior to the expiration of his insured status").

Moreover, the Court disagrees with the Commissioner's contention that the medical evidence regarding the onset date of Plumley's adjustment disorder was not ambiguous, and finds that, like the ALJ in *Field v. Shalal[a]*, No. CIV. 93-289-B, 1994 WL 485781, at *3 (D. N.H. Aug. 30, 1994), the ALJ in this case was required to satisfy SSR 83-20's mandate to retain a medical advisor to assist in inferring a reasonable onset date and determining whether that date was consistent with the claimant's allegations. In *Field*, the Court held:

> The ALJ's failure to explicitly rely on SSR 83-20 does not by itself require remand. In this case, however, the ALJ's reasoning also fails to comport with SSR 83-20's substantive requirements. *Rather than determine whether Field's alleged date was consistent with the other record evidence, the ALJ primarily rejected this date simply because the record evidence did not affirmatively support it.* Yet SSR 83-20 precludes the ALJ from rejecting Field's alleged date on this ground. To reject Field's alleged date, the ALJ must determine that it conflicts with the other evidence on record. Moreover, *if the medical evidence is ambiguous, the ALJ must retain a medical advisor to assist him in inferring a reasonable onset date and then determine whether this inferred date is consistent with Field's allegations.* The ALJ took neither of these steps. The medical evidence and work history cited by the ALJ also are not clearly inconsistent with Field's alleged onset date. I therefore reverse his decision denying her . . . benefits and remand the case for a redetermination of her onset date.

*Id.* (emphasis added) (internal citations and footnote omitted); *see also Spellman v. Shalala*, 1 F.3d 357, 363 (5th Cir. 1993) ("[B]ecause Spellman's mental impairment was of a slowly progressive nature, and the medical evidence was ambiguous with regard to the disability onset date, the Appeals Council could not have inferred an onset date based on an informed judgment of the facts without consulting a medical advisor."); *Morgan v. Sullivan*, 945 F.2d 1079, 1082-83 (9th Cir. 1991) (SSR 83-20 "suggests that when the evidence regarding date of onset of mental impairment is ambiguous . . ., the ALJ should

determine the date based on an informed inference. Such an inference is not possible without the assistance of a medical expert.") (internal citation omitted).

As noted earlier, although a claimant's alleged onset date is "the starting point" and the claimant's work history is "frequently of great significance," the medical evidence serves as the "primary element" in determining onset date. SSR 83-20, at *2. The medical evidence in this case is ambiguous with respect to the onset date of Plumley's disability. Despite the ALJ's statement in his decision that the earliest medical evidence of a mental impairment is dated May 1984 (*see* AR 11)[7], in fact, the first treatment records documenting Plumley's mental impairment are records from Howard Mental Health Services dated September 1983, approximately two-and-one-half years after Plumley's 22nd birthday. (*See* AR 794, 820, 832-39.) Preliminarily, it is noteworthy that, although two-and-one-half years may constitute an unreasonably long period to delay treatment with respect to certain illnesses, it is not so remarkable when dealing with mental illnesses such as PTSD and adjustment disorder, which often go untreated for long periods of time. *See Shaw v. Chater*, 221 F.3d 126, 133 (2d Cir. 2000) ("Just because plaintiff's disability went untreated does not mean he was not disabled."); *Jones v. Chater*, 65 F.3d 102, 103 (8th Cir. 1995) ("Although PTSD may not be degenerative in the same classic sense as a condition like diabetes, PTSD is an unstable condition that may not manifest itself until well after the stressful event which caused it, and may wax and wane after manifestation."). Moreover, the ALJ appears not to have noticed (and

---

[7] The ALJ erroneously stated in his decision that "[t]he first and earliest medical evidence dealing with a psychiatric impairment is a report from Ms. Phyllis Monahan, the claimant's mental health counselor, *dated May 1984[,]*" and that "there are no earlier reports of treatment from Ms. Monahan or any other counselor." (AR 11 (emphasis added).)

Plumley's counsel failed to bring to his attention) a potentially significant note from the September 1983 records, which states that Plumley "sa[id] she was seen at Franklin County Mental Health for about 2 mos. in 1979." (AR 832.) That would have been just prior to Plumley's alleged onset date of January 1, 1980.

The September 1983 medical records consist of "progress notes" prepared by Howard Mental Health Services clinician Phyllis Monahan and reviewed by medical director Dr. Gail Baitan. (AR 839.) Most significantly, the notes diagnose Plumley with PTSD and atypical personality disorder. (*Id.*) The notes contain many references to the 1967 fire and Plumley's consequent scarring burns, stating for example: "The trauma of a fire, being burned and scarred, the deaths of two people has not been dealt with, nor worked through." (*Id.*) In a May 22, 1984 treatment note, Monahan reported: "[Plumley] has recurrent recollections of the fire [and] reports reduced involvement with the external world after the trauma, as shown by her constricted affect through childhood. She also reports sleep disturbances, startle response to fire alarms, and fire engine sirens." (AR 820; *see also* AR 795 ("she talked about trauma of fire[, and, w]hile claiming she couldn't remember the situation, . . . gave a vivid description of being admitted to a hospital"), 821-33.) An undated report signed by Monahan, which diagnosed Plumley with PTSD (delayed) and avoidant personality disorder, states that Plumley "is product of deprived home situation who experienced trauma of fire + ridicule of hairlessness [and] is immature, dependent, distrustful of others, lacking interests + friends." (AR 803-04.) As of October 1985, Plumley was still undergoing regular counseling with Monahan, and was working through issues related to the fire. (AR 799.)

The next significant medical evidence in the record are hospital records documenting Plumley's ten-day hospitalization for a mental impairment in July and August 1984, a little over three years after her 22nd birthday. (AR 392, 430-37, 439-41.) Those records indicate that Plumley was diagnosed with adjustment disorder with depressed mood. (AR 392.) The ALJ minimized Plumley's 1984 hospitalization, stating that it was the result of "what was described as marital problems." (AR 13.) A ten-day hospitalization solely for "marital problems" strains credulity. It is certainly plausible that Plumley required hospitalization at least in part due to an underlying mental impairment which began prior to Plumley's 22nd birthday. A medical advisor could have assisted the ALJ in making this determination.

The record also includes recent documentation from two treating medical providers who suggest that the onset date of Plumley's adjustment disorder was before February 15, 1981. First, physician's assistant ("PA") Margaret Russell stated in a July 1, 2008 "Medical Source Statement of Ability to Do Work-Related Activities (Mental)" that Plumley had been "unable to work for over 10 years" and had "persisting symptoms of PTSD[,]" and that *Plumley's limitations first presented at "childhood."* (AR 852-53 (emphasis added).)[8] Second, psychotherapist Dr. Pamela Nash stated in a July 3, 2008 "Medical Source Statement of Ability to Do Work-Related Activities (Mental)" that *Plumley's limitations "seem[] to go back to the fire."* (AR 791 (emphasis added).)

---

[8] Similarly, in March 2002 and June 2008 notes, treating therapist Holly Wakefield connected Plumley's mental impairment to her childhood, stating that Plumley "suffers from Posttraumatic Stress Disorder due to trauma suffered as a child[,]" and that Plumley "cannot fully remember the traumatic events of her childhood and her family has not been helpful in sorting out her conflicting memories." (AR 694, 764.)

The ALJ's decision does not state what weight was given to Russell's opinion, and dismisses Dr. Nash's opinion on the grounds that the Doctor "did not begin treating [Plumley] until . . . almost twenty five years after [Plumley's] alleged onset date of disability." (AR 12.) The Court makes no findings on what weight the ALJ should have afforded to the retrospective opinions of Dr. Nash and PA Russell. As noted above, pursuant to SSR 83-20, the only issue which must be decided by the Court at this time is whether "the evidence is *ambiguous* regarding the possibility that the onset of [Plumley's] disability occurred before the expiration of her insured status," and if the answer is in the affirmative, the ALJ should have called on the services of a medical advisor at the administrative hearing. *Grebenick v. Chater*, 121 F.3d 1193, 1200-01 (8th Cir. 1997) (emphasis added). Nonetheless, it is worth noting that Dr. Nash and PA Russell's retrospective opinions could conceivably be afforded some, if not significant, weight. *See, e.g., Dousewicz v. Harris*, 646 F.2d 771, 774 (2d Cir. 1981) (holding that, although doctor did not treat claimant during the relevant period, his opinion was still entitled to significant weight); *Burton v. Astrue*, No. 07-22272008, WL 2890952, at *9 (E.D. Pa. Jul. 24, 2008) ("Retrospective diagnosis of an impairment, even if uncorroborated by contemporaneous medical records, but corroborated by lay evidence relating back to the claimed period of disability, can support a finding of past impairment. With some impairments, an ALJ can consider medical evidence obtained many years after the alleged onset date.") (citations omitted). This Court has held: "There is no bright-line rule in the case law or regulations precluding the consideration of retrospective diagnoses; quite to the contrary, other courts have recognized and applied

such diagnoses when . . . there is corroborating evidence contemporaneous with the claimant's coverage period."  *Machia v. Astrue*, No. 2:08-CV-103, 2009 WL 3806326, at *8 (D. Vt. Nov. 16, 2009) (citing *Allord v. Barnhart*, 455 F.3d 818, 820-21 (7th Cir. 2006)).  And the Seventh Circuit has held:

> A disease might have a well-understood progression, so that a physician examining a patient at time t might have a good idea of what the patient's condition had been at time t-n, where n was the number of years, prior to the examination, by which time the patient would have had to be completely disabled to be entitled to benefits.

*Allord v. Barnhart*, 455 F.3d at 822; *see also Likes v. Callahan*, 112 F.3d 189, 191 (5th Cir. 1997) ("Retrospective medical diagnoses constitute relevant evidence of pre-expiration disability, and properly corroborated retrospective medical diagnoses can be used to establish disability onset dates."); *Lesmeister v. Barnhart*, 439 F. Supp. 2d 1023 (C.D. Cal. 2006) (ALJ decision reversed, where ALJ rejected retrospective psychiatric opinion from doctor who began treating claimant in 2000 but proffered opinion that claimant's disability began shortly after traumatic event occurring February 1989; ALJ's rejection of retrospective diagnoses was contrary to established law, and thus the court credited psychiatrist's opinion as to claimant's onset date.).

In contrast to the 1983-1985 counseling notes and hospitalization records and the retrospective opinions of Dr. Nash and PA Russell, the record also includes documentation from two non-treating state physicians, psychiatrist Dr. C. Kang and psychologist Dr. Joseph Patalano, who opine that there is no evidence supporting Plumley's allegation that she suffered from a mental impairment prior to February 16, 1981.  Specifically, in March 2007, Dr. Patalano opined that, although Plumley suffered

from "PTSD assoc[iated] with childhood trauma (burns) and residual trauma," there was "insufficient evidence to rate for period 1/1/1980 or prior." (AR 615.) Likewise, in August 2007, Dr. Kang opined that "[t]he evidence for [Plumley's] claim is insufficient." (AR 619.) In February 2008, after reviewing additional evidence, Dr. Kang again opined that there was insufficient evidence, stating: "We have nothing to include when she was at her age 22, 1981. First treatment she has ever entered into treatment was 1990, about 9 years after the age 22." (AR 621.) Dr. Kang continued: "I have give[n] every effort to give benefits of doubt but there still is nothing to assess [Plumley's] psychological state in 1981 at her age 22 and before. Also it actually appear[s] that she has very little likelihood that she had any mental impairment at that time. This claimant has functioned quite well until she became depressed in 1990 about ten years after her 22nd birthday . . . ." (AR 622.)

The value of Dr. Kang's 2008 assessment is diminished by two factual inaccuracies contained therein. First, Dr. Kang inaccurately stated that Dr. Nash's October 2007 report indicated "no evidence of PTSD" (AR 621), when in fact, the cited report stated just the opposite: "Plumley meets criteria for both Recurrent Major Depressive Disorder, and Post Traumatic Stress Disorder" (AR 620). Second, and more importantly, Dr. Kang erroneously stated in his August 2008 assessment that there was no evidence of treatment prior to 1990. (AR 621-22.) As discussed above, however, there are medical records documenting Plumley's treatment for her mental impairment in 1983 and 1984. Dr. Kang either did not possess these records when he prepared his assessment, or he disregarded them without proper explanation. It is unclear whether Dr.

Patalano had the benefit of the 1983 and 1984 records when he completed his assessment. Moreover, both doctors improperly based their findings on a lack of evidence, rather than attempting to infer an onset date based on the evidence contained in the record.

Given the opinions of non-treating state physicians Drs. Kang and Patalano on the one hand, and the 1983-1985 treatment records and the retrospective opinions of treating physician Dr. Nash and treating PA Russell on the other hand, there is ambiguity in the medical evidence with respect to whether Plumley's mental impairment existed prior to her 22nd birthday. There is also ambiguity in the non-medical evidence, and the ALJ's general finding that Plumley "functioned quite well until she became depressed in 1990"[9] is not supported by the record. Medical records from 1983-1984, including hospitalization reports, belie this characterization, as do the numerous counseling notes from before 1990, which document Plumley's depression, adjustment disorder, PTSD, and sleep problems, as well as her difficulty maintaining a job and being around people in general. In support of the finding that Plumley "functioned quite well" until 1990, the ALJ's decision states that Plumley completed high school with passing grades in all but one subject, married twice, had two children, worked as a housewife, and had various jobs including waitressing and cooking. (AR 12.) Although these basic facts are true, a thorough review of the record reveals that, in each of these areas, Plumley experienced significant problems.

---

[9] The ALJ apparently adopted this finding from Dr. Kang's February 2008 report. (*Compare* AR 622 with AR 12). As noted above, however, Dr. Kang does not appear to have been in possession of the 1983 and 1984 medical records when he completed his report.

First, although Plumley did complete high school, she received counseling for depression and other issues, and she stated numerous times throughout the record that she endured sustained ridicule in school as a result of her disfiguring burns. (*See, e.g.,* AR 242, 252, 665, 694).[10] Notes from a phone interview conducted by DDS officer Elizabeth Pendergress with Plumley's sister, Robin Reel, confirm the difficulty Plumley experienced in school after the fire, as a result of her scars and lack of hair. (AR 246.) Second, with respect to Plumley's marriages, both were short and ended in divorce (AR 688, 832); Plumley has claimed her first husband "drove [her] insane," leading to her 1984 hospitalization for mental illness (AR 281-82, 392); and Plumley has alleged her first husband sexually abused their young son (AR 285, 419, 688, 694, 815) and physically abused her (AR 688, 694). Third, with respect to Plumley's children, as noted above, there are allegations that her first husband inappropriately touched their son (AR 285, 419, 688, 815); and Plumley's daughter apparently never met her father (AR 282), exemplifying Plumley's documented habit of entering into abusive, short-term sexual relationships (AR 688, 694 ("[Plumley] has had a number of abusive relationships, sexually and physically.")). Moreover, there are multiple references in the record to Plumley's asserted fear that she would "lose control" and "harm" her two-year old son and 5-year old daughter. (*See* AR 831-32, 193; *see also* AR 414.)

---

[10] There are also numerous references throughout the record to Plumley's assertion that she was sexually abused by male family members as a child (*see, e.g.,* AR 285, 419, 433, 665, 688, 694, 813, 826, 831), which issue the ALJ does not address in his decision. Because the issue has not been raised in Plumley's Motion, however, the Court does not consider whether the ALJ's failure to discuss and analyze such alleged sexual abuse in the context of determining Plumley's disability onset date amounted to harmful error.

Fourth, the ALJ's finding that Plumley was able to work as a housewife, a waitress, and a cook are essentially meaningless, as they are not accompanied by factual findings with respect to how successful Plumley was at being a "housewife" and what kind of housekeeping chores this entailed, and how long she was employed as a waitress and a cook and why those jobs ended. Moreover, with respect to Plumley's ability to perform household chores, it has been "repeatedly stated that a claimant's ability to perform household chores is not evidence of his [or her] ability to perform work as these activities do not reflect real world work capabilities." *Freels v. U.S. R.R. Retirement Bd.*, 879 F.2d 335, 341 (8th Cir. 1989); *see also Davis v. Celebrezze*, 233 F. Supp. 292, 294 (E.D.S.C. 1964) (disagreeing with assertion that the fact that claimant stayed in her son's home with her grandchildren indicated she was not disabled, and stating "[i]t is not necessary that one be bedridden to come within the statute's provisions[,]" and "[t]he ability to do a little housework is insufficient to negative presumption that claimant is unable to engage in substantial gainful employment").

With respect to Plumley's prior employment, a more in-depth look at the record demonstrates that, since 1980, Plumley has not held a job for more than a few months. (*See, e.g.,* AR 137-38, 184-87, 197, 204, 212-13, 219, 222, 227-28, 280-82, 430, 829.) A December 2006 "Work Activity Report" states that "[a]ll jobs since 1980 are clearly not [Substantial Gainful Activity] when asking the claimant and referencing the [Detailed Earnings Query] and [Summary Earnings Query]." (AR 219.) Likewise, a December 2006 "Disability Report" states: "Claimant has not performed [Substantial Gainful Activity] since 01/01/1980 and all jobs that have been performed have been unsuccessful

work attempts.  [Claimant] was badly burned as a young child and the physical and social trauma caused all jobs to end shortly after they began."  (AR 222.)  Substantiating these Reports, prior employers, including Macro International Inc. and Mortgage Services Inc., reported to DDS examiners that Plumley "only worked for them briefly and no one remembers her" (AR 185),  and that Plumley "did not come to work for 2 scheduled shifts and did not call with explanation" and thus was fired (AR 187).  January 1984 treatment notes from clinician Phyllis Monahan document Plumley's difficulty maintaining employment:

> Tina had begun new job, worked for four hours, then walked out.  She was cleaning at I.B.M., received little training, reacted badly to routine of cleaning office after office, & not being 'rescued' at break time.  Now she is upset at quitting.  She talked about another job she had, & liked, but quit when boss 'made a pass' & was not friendly to her parents.

(AR 829.)  July 1984 treatment notes from the Medical Center Hospital of Vermont state that Plumley was a "[h]ousewife[,]" and "[l]ast worked out of home [approximately] 2 years ago in various jobs including waitress & short order cook.  Longest job [was approximately] 2 mos."  (AR 430.)

The Court concludes that the evidence is ambiguous with respect to the onset date of Plumley's mental impairment.  As such, the ALJ was required to call a medical advisor to assist in inferring an onset date.  *See, e.g., Blea v. Barnhart*, 466 F.3d 903, 912-13 (10th Cir. 2006) (where medical record was ambiguous and did not clearly document the progression of claimant's impairments, and where ALJ made inferences that did not necessarily flow from the facts, case was remanded with instructions to follow provisions of SSR 83-20 and call a medical advisor to assist in inferring an onset

date); *Walton v. Halter*, 243 F.3d 703, 709-10 (3d Cir. 2001) (when faced with child's disability insurance case involving previously hospitalized claimant alleging disability on basis of bipolar disorder which was known to be slowly progressive, alleged onset date more than 30 years in past, and lack of contemporaneous records, ALJ was required to call on services of medical advisor rather than rely on his own lay analysis of evidence in inferring onset date). It is not for the Court to determine when that date was, but it appears entirely possible that it was prior to Plumley's 22nd birthday, given the opinions of Dr. Nash and PA Russell and the ample other evidence in the record documenting that (a) Plumley's mental impairment was at least partially caused by the 1967 fire and her resultant disfigurement; (b) Plumley was diagnosed with and hospitalized for PTSD and adjustment disorder within approximately three years of her 22nd birthday; and (c) since at least 1980, Plumley has been unable to maintain a job for any significant length of time. On remand, before determining the severity of Plumley's adjustment disorder, the ALJ is instructed to infer an onset date with the assistance of a medical advisor.

## Conclusion

For these reasons, the Court GRANTS Plumley's Motion (Doc. 7), DENIES the Commissioner's Motion (Doc. 13), and REMANDS the matter for further proceedings in accordance with this ruling.

Dated at Burlington, in the District of Vermont, this 8th day of February, 2010.

/s/ John M. Conroy
John M. Conroy
United States Magistrate Judge